UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION - SANTA ANA


SPITZ TECHNOLOGIES CORPORATION, ) CASE NO: 8:17-CV-660-JVS-JCG
                                 )
                Plaintiff,       )          CIVIL
                                 )
        vs.                      )     Santa Ana, California
                                 )
NOBEL BIOCARE USA, LLC, ET AL,   )  Monday, November 13, 2017
                                 )
                Defendants.      )   (2:29 p.m. to 3:00 p.m.)


1. DEFENDANTS' MOTION TO COMPEL ANSWERS TO INTERROGATORIES
       OF SPITZ TECHNOLOGIES CORPORATION [52];

2. PLAINTIFF'S MOTION TO COMPEL ANSWERS TO FIRST SET
   OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS
AND FIRST SET OF INTERROGATORIES TO NOBEL BIOCARE USA LLC [56]


BEFORE THE HONORABLE JAY C. GANDHI,
UNITED STATES MAGISTRATE JUDGE



<u>APPEARANCES</u>:              SEE PAGE 2


Court Reporter:            Recorded; CourtSmart

Courtroom Deputy:          Kristee Hopkins

Transcribed by:            Exceptional Reporting Services, Inc.
                           P.O. Box 18668
                           Corpus Christi, TX 78480-8668
                           361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>**APPEARANCES**</u>:


For Plaintiff:          JAN P. WEIR, ESQ.
                        KATHRINE J. BRANDT, ESQ.
                        Michelman & Robinson
                        17901 Von Karman Ave., Suite 1000
                        Irvine, CA 92614

For Defendants:         JOHN B. SGANGA, JR., ESQ.
                        SHEILA N. SWAROOP, ESQ.
                        Knobbe Martens Olson & Bear
                        2040 Main St., 14th Floor
                        Irvine, CA 92614

1   **Santa Ana, California; Monday, November 13, 2017; 2:29 p.m.**

2                          **(Call to Order)**

3        **THE CLERK:**  Calling Case Number SA CV 17-660, that's

4   Spitz Technologies Corporation versus Nobel Biocare USA.

5   Counsel, please your appearances for the record.

6        **MR. WEIR:**  Good afternoon, your Honor.  Jan Weir and

7   Kathrine Brandt for the plaintiff, Spitz Technology [sic].

8        **MR. SGANGA:**  Good afternoon, your Honor.  John Sganga

9   and Sheila Swaroop with Knobbe Martens for the defendant, Nobel

10  Biocare.

11       **THE COURT:**  All right.  Good afternoon, everyone.

12  Thanks for your patience.

13       So here's what I'm going to do.  I'm going to go

14  first and then if you want to discuss a particular point, we

15  can but I'm not anticipating a whole lot of argument.  So let's

16  go first on Nobel's Motion to Compel.

17       I'm going to grant as to Rog 4 and the Document

18  Requests 15, 48 and 49.  I'm going to grant, in part, on the

19  Document Requests for 16, 18 and 22.  And the grant, in part,

20  is, essentially, let's get a declaration about a reasonable

21  inquiry, diligent search, no docs, and not withholding on the

22  basis of privilege.

23       And then I'm going to grant on 28 and 29.  Those are

24  the Germany litigation docs, the European Patent 1480575.

25  Grant on 35 and 36, and grant on 37.

1          Forty two and 43, that's a grant, in part, and I want

2   a declaration regarding all the efforts undertaken to comply

3   with those requests.

4          Okay.  That's Nobel's Motion to Compel.  Anybody want

5   to be heard on that?

6          **(No audible response).**

7          I'm really not looking for a rehash on argument on

8   the --

9          **MR. WEIR:**  Clearly --

10         **THE COURT:**  I really am not.  I'm actually very --

11   just so I can give you a macro.  It's not how -- I asked you to

12   meet and confer to be able to resolve this.  I was disappointed

13   on the way the first motion came in and then I've been

14   disappointed way the supplementals came in.  But be that as it

15   may, I kind of told you where I was headed and still there was

16   no meet and confer and so I'm just not expecting a lot of

17   argument.  I really am not.  So if there's something in

18   particular that you feel compelled that you think I've really,

19   really just got it wrong, then tell me but I'm not -- I'm not

20   going to parse through -- and if you're going to have some sort

21   of argument about, "Hey, Judge, look at the way these are

22   framed," you know, "when they said 'all communications,' we

23   didn't really think it was all communications.'"  I'm not in

24   the mood for that.  I just want to give you that.

25         Shoot.

1          **MR. SGANGA:**  Your Honor, just a clarification in

2   terms of timeframe.

3          There were several declarations that the ruling

4   related to and just wanted to have some sense of when we could

5   expect those from the plaintiff.  And if Plaintiff's Counsel

6   wants to suggest a timeframe that they believe is reasonable,

7   that's certainly acceptable to us.

8          **MR. WEIR:**  This Friday, your Honor.

9          **THE COURT:**  You want the declarations by this Friday?

10          **MR. WEIR:**  I believe we can provide them, the

11   documents and the declarations by this Friday.  I do have one

12   comment that I'd like to --

13          **THE COURT:**  Shoot.

14          **MR. WEIR:**  The -- 42 and 43 are the testimony of the

15   inventors.  And what they're seeking is not testimony relating

16   to the patent in suit but, you know, for example, the two

17   inventors are dentists.  And it's possible that in the scope of

18   their business, maybe they've sued somebody for payment of

19   their fees, maybe they've been sued for malpractice.  I don't

20   know.

21          STC does not keep records of individual shareholders

22   or other people's testimony, just like no other company really

23   would.  And so forcing STC to try and get testimony from any

24   kind of proceeding anywhere involving the inventors, presents a

25   serious problem.  They -- the inventors don't need to cooperate

```
 1   with us.  It -- you know, we can ask but --
 2             THE COURT:  Don't you represent them?  Who represents
 3   Dr. Carmichael?
 4             MR. WEIR:  We would represent Dr. Carmichael.
 5             THE COURT:  And you represent Dr. Sandor (phonetic)?
 6             MR. WEIR:  Yes.  Potentially.
 7             THE COURT:  So do you kind of see where I'm getting
 8   frustrated that if you represent one and potentially represent
 9   the other, that you're arguing to me about how you can't look
10   in their files?
11             MR. WEIR:  Well --
12             THE COURT:  Can you see how I would react to that?
13             MR. WEIR:  Well because with -- within the context of
14   this case, yes, I represent them with respect to the
15   infringement of the patent, the validity of the patent and so
16   on.  But I don't represent them and have any dealings with them
17   with respect to their personal lives or their personal
18   businesses.  I don't represent them in that regard.  And so
19   they could perfectly legitimately tell me, we don't either keep
20   'em or we don't want 'em or we're not going to cooperate with
21   you and give 'em to you.  But with respect to the patent in
22   suit, with respect to the issues that are relevant to the issue
23   in this case, I understand that that would be perfectly a
24   reasonable assumption for your Honor to make.  But I just don't
25   see any -- if any company basically being responsible for the
```

1  personal oaths and affidavits and declarations of its employees

2  or shareholders.  It's extremely broad and goes way beyond

3  anything that an (indisc.) company is really required to do.

4        **THE COURT:**  Do you want to be heard, just briefly?

5        **MR. SGANGA:**  Your Honor, what I haven't heard is that

6  any effort has been made by Plaintiff's Counsel to request

7  these documents to the extent they're in the possession of the

8  individual inventors, who also happen to be shareholders in the

9  Plaintiff Spitz entity.

10        **THE COURT:**  I agree.  We need to at least get a

11  declaration.  My notes are saying get a declaration of all the

12  efforts undertaken to comply so --

13        **MR. WEIR:**  Thank you.

14        **THE COURT:**  And get a declaration (indisc.).

15        All right.  Do you want to be heard on your Motion to

16  Compel?

17        **MR. WEIR:**  No.

18        **THE COURT:**  Okay.  So here's what I'm inclined to do.

19  I'm going to give you some thoughts on your Motion to Compel

20  though.

21        Your Motion to Compel actually struck me as sort of a

22  tit for tat and I didn't appreciate that either.  So they're

23  coming in for substantive documents and you feel like you have

24  to have another motion just to put in front of me, the messy --

25  make it all messy and so you're picking on these little things.

1   You're complaining about, you know, rolling production when we

2   don't have a February cutoff until what is it?  February?  So

3   I'm actually being more sharp about it than they are because

4   I've seen people do this kind of thing and I don't appreciate

5   it.  Don't do that again.  Do you understand?  Again, I'm not

6   looking for a lot of argument today.  I just want to know you

7   understand that this is not an idea just to create discovery

8   disputes.

9           **MR. WEIR:**  Absolutely I understand that.

10          **THE COURT:**  All right.  So here's what I'm inclined

11  to do.  I'm inclined to deny it in its entirety.  If there's

12  something in particular that you want me to address, I will.

13          Do you still have general objections in your -- some

14  of your responses?  If you have those, just get rid of them.

15          **MR. SGANGA:**  Your Honor, our communication in the

16  meet and confer was that we are not relying on the general

17  objections.  We thought we made that clear in the October 24th

18  letter.  I'm happy to say here the general objections are not

19  being relied upon by Nobel.

20          **THE COURT:**  Okay.  Let me tell you something else

21  about that that I didn't appreciate.

22          I'm reading through the supplemental and the opening

23  paragraph, like the summary -- right? -- the most valuable real

24  estate on the page is, "They won't remove the general

25  objections."  Then I get into the meat of it and the first

1   paragraph is, "At our meet and confer, they agreed to remove

2   them."  I'm not sure what you were doing.  If you were trying

3   to frustrate me, you have accomplished that.  Congratulations.

4   But I don't think that it behooves you to do that.  I don't

5   think it's an advantage, other than you want me to read a lot.

6        **MR. WEIR:**  May I respond please?

7        **THE COURT:**  By all means.

8        **MR. WEIR:**  So we did have an -- Mr. Sganga did say

9   they were going to remove the general objections.  Then we

10   received supplemental discovery responses which still asserted

11   the general objections.  Since then, we received additional

12   discovery responses from them; which, again, reassert the

13   general objections in exactly the same format they did.  So

14   formally, they have not withdrawn the general objections,

15   they've continued to assert them in every discovery response

16   we've got since then, since the meeting of counsel.  So the

17   fact that he said it, informally during the conference, they

18   didn't follow through with it.  They still asserted them.  So

19   the issue still was ripe, as far as I saw.

20        Secondly, our interrogatories, those are contention

21   interrogatories.  And they specifically told me at the meeting

22   of counsel that they were not going to state all facts, they

23   were only going to just give me whatever facts they choose to

24   give, not all facts.  And these go to their affirmative

25   defenses.  And I've asked them, for example -- one answer, for

1    example, says they're going to be -- they're going to be

2    prejudiced.  It provides no detail, no evidence, no statement

3    of how they're going to be prejudiced.

4            On the estoppel argument, they say -- they argue that

5    they -- there was a transfer of --

6            **THE COURT:** Let me pause you on the state all facts.

7    Do you know in federal court some courts have concluded that

8    you're not allowed to ask those kinds of contention rogs?

9            **MR. WEIR:** I am --

10           **THE COURT:** Are you familiar with that?

11           **MR. WEIR:** I -- I --

12           **THE COURT:** I have a feeling they probably cited you

13   that authority that you're not really supposed to do that.

14           **MR. WEIR:** They -- I do not recall them assigning

15   [sic] it to me.  What I'm --

16           **THE COURT:** That's a State-court sort of vehicle for

17   -- okay.

18           **MR. WEIR:** I'm trying to get --

19           **THE COURT:** I interrupted you.

20           **MR. WEIR:** What I'm trying to get, your Honor, is,

21   the fundamental facts that support these affirmative defenses

22   that they've alleged.

23           **THE COURT:** And you're going to get those from rogs?

24           **MR. WEIR:** I'm asked them and they --

25           **THE COURT:** Are you going to get them from rogs?

1   You're not going to depose their people?  What are we going to

2   do for a trial?

3        **MR. WEIR:**  So -- so --

4        **THE COURT:**  It's going to be witnesses and documents.

5   Having just finished up in Los Angeles a week-long trial --

6        **MR. WEIR:**  But I am aware --

7        **THE COURT:**  -- instead we're going to fight about the

8   rogs and the state all facts.

9        **MR. WEIR:**  I'm aware that there is authority that

10  says, you're better off asking contention discovery through

11  rogs because that gives them a chance to put it down.  It's a

12  lot harder to have a lay witness come in and say, "These are

13  the facts that amount to an equitable estoppel" or "these are

14  the facts that amount to latches."  So it's harder for a lay

15  witness to do that in a depo than to have counsel just give me

16  the facts that they say that support these affirmative

17  defenses.

18       **THE COURT:**  Okay.  Well I'm going to go back to my

19  macro principle.  You know, when it comes to a patent case and

20  there's sophisticated counsel, you-all need to resolve these on

21  your own.  And sort of bringing these things up to me is not

22  going to help your situation.  And I thought about awarding

23  fees.  And I'm not going to at this juncture but I -- I'm not

24  going to see you folks again, right?

25       **MR. WEIR:**  I certainly hope so.  You know, I -- like

1    I said --

2              THE COURT:  Am I going to see you again?

3              MR. WEIR:  I'm fearful --

4              THE COURT:  I don't plan on it.

5              MR. WEIR:  I'm fearful that I'm going to be ambushed

6    at trial with a bunch of discovery I've never received.

7              THE COURT:  If you never received it, that's the

8    great thing about federal court.  It ain't coming in.  If you

9    asked for it and if they didn't turn it over, you're good.

10   It's a little different than State court.  Can't use it.  Ask

11   'em.  You'll be good.  He's not going to -- I forgot who you're

12   in front of.  Are you in front of Judge Selna or Judge

13   Guilford?

14             MR. WEIR:  Selna.

15             THE COURT:  It ain't gonna come in.

16             But I don't want to see this anymore.  I don't want

17   to -- I assure you, to see the Motion to Compel the first time

18   after I kind of indicated where I was headed, to see it, it

19   kind of really disappointed me.  I thought -- I didn't think I

20   was going to see you after that.  So ... if there's something

21   in particular you want from the -- if there's something truly

22   particular that you want from them, tell me now because I have

23   to tell you, you know, by the time -- you put your document

24   production request at the very end of your joint report so by

25   the time I got there, I was looking through them, you know -- I

13

1   mean, what was the first one?  That you didn't get financial

2   data past six years?

3          **MR. WEIR:**  They are alleging that the patent in this

4   case is --

5          **THE COURT:**  What's the statutory period?

6          **MR. WEIR:**  It doesn't matter.  They are alleging that

7   the patent in this case is obvious.  Their sales go back longer

8   than six years.  It is perfectly appropriate in patent cases to

9   use the accused products' infringing sales as evidence of

10  commercial success.

11         Also, at the same time, they had another product

12  that's not accused of infringement.  And the sales, the

13  comparative sales between those products will establish that

14  the accused products was highly, highly commercially

15  successful.  And what they're doing is is they're blocking me

16  from proving commercial success, which is very important,

17  because they're not giving me the full data.  It's a --

18         **THE COURT:**  I disagree.

19         **MR. WEIR:**  It's a computer printout.

20         **THE COURT:**  I was suggesting I would -- didn't want

21  to hear argument, you know.  I guess I should echo that.

22         I guess my point to you -- and I want you to follow

23  me on the bigger point -- is that when I get there and I see

24  the six years.  And I turn to Request 14 which is, they already

25  produced the docs.  Get to Request 15, I get briefing on an

```
 1   issue that's been resolved.  That -- that was -- thank you.

 2   Because I don't have enough to actually do.  Sixteen and 17,

 3   you're complaining about a rolling production?

 4        MR. WEIR:  They still haven't finished producing

 5   their documents but --

 6        THE COURT:  I mean, really?  You're complaining to me

 7   about a rolling production when the discovery cutoff's not till

 8   February.  I mean --

 9        MR. WEIR:  But we have to do follow up stuff --

10        THE COURT:  You get to Request Number 18 which is

11   literally, all docs regarding all communications ever.  You

12   don't want to see what my notes said.  I assure you, you don't.

13   You really don't want to see what they say, half of which I

14   haven't even stated to you, other than to say that the whole

15   sense I got from that motion was, "You're gonna file a motion;

16   I'm gonna file a motion".  May --

17        MR. WEIR:  No, I respectively submit that was not the

18   case.

19        THE COURT:  Maybe -- maybe I'm wrong.

20        MR. WEIR:  I'm legitimately trying to get discovery

21   so I can take the case to trial.

22        THE COURT:  Okay.  I'll take you at your word.  You

23   take me at mine.  I don't want to see you again.  That's kind

24   of -- I mean, that's got to be kind of shining through right

25   now, right?  I mean, you need to resolve these discovery
```

1   disputes on your own.  Yeah, I really need you to work together

2   and I need the two lead counsel to get in, meet with each

3   other, and you guys get on the phone and resolve it from now

4   on.  Am I being clear?

5            MR. SGANGA:  Understood, your Honor.

6            MR. WEIR:  Understood.

7            THE COURT:  Okay.  So I'm going to go back.  I'm

8   going to give you this one final time.  Is there something very

9   particular, surgically, that you need that you're not getting?

10           MR. WEIR:  I honestly do not believe they've given us

11  a full response to our contention discovery.  But if the --

12  if --

13           THE COURT:  You mean the rogs?

14           MR. WEIR:  The rogs.  They are not -- they are not

15  fully responsive.  But if you're -- if they can't use anything

16  they're not giving me -- which is that I said during our meet

17  and confer.  If you just want to say right now you can't use

18  it, I'm fine.  But what I don't want to have happen is, going

19  to trial -- 'cause it's happened -- where somebody all of a

20  sudden comes in and says, now -- now when they -- now when it

21  really counts --

22           THE COURT:  What -- what contention rog?  Which one?

23           MR. WEIR:  There's -- I don't know off the top of my

24  head.  The ones --

25           THE COURT:  Tell --

```
 1          MR. WEIR:  -- that relate to their contention.

 2          THE COURT:  Tell me the one that you're most worried

 3   about.  Are you worried about their affirmative defense on --

 4          MR. WEIR:  -- estoppel.

 5          THE COURT:  Okay.  What rog number is that?

 6          MR. WEIR:  Bear with us one moment.

 7      (Pause)

 8          THE COURT:  Is it Number 2?

 9          MR. WEIR:  Almost there, your Honor.

10      (Pause)

11          THE COURT:  Number 2, Equitable Estoppel.  That's the

12   one you're worried about?

13          MR. WEIR:  Yes.

14          THE COURT:  Okay.

15      (Pause)

16          MR. SGANGA:  Your Honor, we did supplement this

17   response after the motion was initially filed.

18      (Pause)

19          THE COURT:  Okay.  This is where you -- where you

20   took from your answer in your counterclaim originally and then

21   you supplemented it?

22          MR. SGANGA:  Correct, your Honor.

23          THE COURT:  Okay.  Does anyone have the current

24   response?

25      (Pause)
```

1          Ms. Brandt, you can just tell me.  What -- the

2    response to Rog Number 2, what more were you looking for?  What

3    information were you looking from from them?

4          **MR. WEIR:**  They've made allegations of reliance and

5    prejudice.  It's very conclusory.  They say that they moved

6    shipping from Switzerland to the United States.  There's no

7    dates, there's no documents, there's no identification of any

8    document that reflects that their -- the -- what they did.

9    They're prejudiced.  When they did it.  So I don't have any

10   information.  I have an allegation, a broad allegation that

11   they've been prejudiced because some manufacturing was moved

12   from one location to another but nothing of substance beyond

13   that.

14          **THE COURT:**  And you haven't gotten it from

15   depositions?  You haven't taken the depositions.

16          **MR. WEIR:**  We -- we've taken their Rule 36(b)(6)

17   deposition.  The one witness didn't know anything.  The other

18   witnesses are -- were on different subjects so I can't tell you

19   right now whether or not we served the Rule 36(b)(6) deposition

20   that specifically asked for all facts relating to the

21   affirmative defenses.  I don't recall that we have.

22          **MR. SGANGA:**  Your Honor, the supplemental response is

23   Exhibit 20 to Ms. Brandt's Second Declaration.  And we laid out

24   the events that we plan to rely on as showing prejudice.  And

25   certainly there is this move of the manufacturing facility.  We

1   think this is an appropriate response in an interrogatory to

2   identify the decisions that were made and the events that

3   occurred that we believe were relevant to this particular

4   defense.  And certainly to the extent that we're going to

5   present any evidence on this, we're going to have to stick to

6   the categories that we've identified here.  And there have not

7   yet been any depositions on this.  And certainly the specifics

8   of what that move of the production facility entailed are

9   things that we would expect to get explored further in

10  discovery.

11          **MR. WEIR:**  So what he said is "category" which --

12  what he just said was the category of documents which means

13  he's giving me a broad answer but nothing specific about when

14  was the move?  Who were the witnesses?  Who can I depose that

15  has knowledge about this event or the other events that they

16  referred to in the interrogatory response.  That's -- that's

17  what we're looking for is the identity of the documents that

18  reflect this alleged prejudice, or reliance, and the witnesses

19  that we can -- that supposedly have knowledge about it.  So if

20  we can, we can depose them.  And so we have an allegation, an

21  assertion, but nothing below it.

22          And if your Honor did -- if your Honor ruled, for

23  example, they cannot introduce into evidence any testimony or

24  documents not identified in that interrogatory response, I'd be

25  perfectly satisfied because I'd bring my motion for summary

1    judgment.  But they -- they haven't and they're hedging it and

2    so we're not getting a full response.

3           And just by way of background, we were in front of

4    Judge Selna already on a motion.  And Judge Selna told me to

5    serve a contention interrogatory so we served a contention

6    interrogatory trying to get the information.  Okay?  So, you

7    know, they've made allegations about licenses and proposed

8    licenses and they've made a lot of these allegations and

9    they're not backed up by anything.  And so what we're trying to

10   do is nail it down so that I can re-bring my motion to get rid

11   of this defense.

12           **THE COURT:**  So let me tell you why -- I don't know

13   what Judge Selna said; I don't know why you were there.  But if

14   he told you to bring a contention rog, I've got to tell you, I

15   usually am not getting motions to compel on rogs because my

16   visceral reaction is, depose them.  And so in that vein, I'm

17   wondering, if this is so important, why you just don't put a

18   30(b)(6) category and ask them.  But -- but -- but I'm going to

19   give it to you.  So what I'm going to ask them to do -- it's

20   Interrogatory Number 2 -- is give you a more robust response to

21   that.  And I'll order them to supplement within -- I don't know

22   -- you tell me.  Can you do it in seven days?

23           **MR. SGANGA:**  I think that would work, your Honor.

24           **THE COURT:**  Okay.  It's going to have the same thing

25   at the bottom though that says, "As we gain more information,

1  we're going to supplement again."  You know that?  Right?  I

2  mean, you know how this all fits together.

3        **MR. WEIR:**  Well but I understand --

4        **THE COURT:**  Okay.

5        **MR. WEIR:**  -- that people make objections.  The point

6  is, is this is an affirmative defense.  This is something where

7  they're saying, "These events happened to us and we relied on

8  these events".  So for them to say that they need some other

9  discovery to figure out what it is that they did, it strikes me

10  as disingenuous but --

11        **THE COURT:**  Okay.  But you got it.  Is there anything

12  else that you surgically want that you really, really care

13  about?

14        **MR. WEIR:**  I would like to have the financial

15  information going back to the original sales.  To the -- it was

16  introduced apparently in 2008.  So for the -- the accused

17  product, I would like it to go back to the date of introduction

18  so I can make the case that the product was commercial

19  successfully -- was commercially successful in response to

20  their invalidity arguments.  It's like three years or more --

21  of more sales data.

22        **THE COURT:**  You already produced the 2011, right?

23  April 2011?

24        **MR. SGANGA:**  Correct, your Honor.  And I think the

25  issue here is going to be the format of that data.  As it gets

```
 1    older, it may be on a Legacy computer systems.  So the
 2    plaintiffs have requested sales broken down my month -- which
 3    we may not be able to do if we're going back earlier in time.
 4    And so there's a point at which -- there have been a lot of
 5    sales.  Going back to 2011, there's a lot of sales.  I don't
 6    think that the marginal value to that -- that commercial
 7    success issue is going to be significant going back earlier.
 8    What we'd be willing to do is to explore just how easily we can
 9    get some of that pre-2011 sales data.  It may not be in the
10    same format and as itemized as specifically as Plaintiff has
11    asked us to do with respect to the sales that have been
12    post-the statute of limitations period.
13              THE COURT:  I have a feeling Mr. Weir is going to
14    object to the "explore."
15              All right.  You can have it.  2000 -- produce the
16    information to 2008.  That's when the product first came
17    online?
18              MR. WEIR:  I believe 2008 was the first sales.  It
19    could have been --
20              MR. SGANGA:  Seven.  So we've already given general
21    sales --
22              THE COURT:  Oh, so you have to go back four years.
23              MR. SGANGA:  Correct.  We've given sales on an annual
24    basis back to 2009.  So now we're -- now we're talking about
25    another two-year period.  So -- and again, if we can do it on
```

1   an annual basis, I'm much more confident that it's something

2   that will be doable.

3          **THE COURT:**  Does that serve your purposes if you get

4   it on an annual basis as opposed to month-to-month?

5          **MR. WEIR:**  Yes.

6          **THE COURT:**  Okay.  Okay.  And we'll do it all the way

7   back to when the product first went online.  So 2007?

8          **MR. WEIR:**  Seven, yes.

9          **THE COURT:**  Okay.  Okay.  So 2007 to -- you've

10  already produced up to '11 so 2007 to 2010 sales.

11         So you got your two things, right?  The equitable

12  estoppel that you wanted and the sales?  I'm not going to ask

13  again if there's anything else you want because you're going to

14  give me something else.

15         **MR. WEIR:**  Those are the most critical things, your

16  Honor, thank you very much.

17         **THE COURT:**  Okay. If those are -- if those are the

18  most critical, then you've got those.

19         Can you do me a favor please both of you?  This is

20  one of them.  The other one is here.  There's a lot of other

21  things going on and so try not to get into anymore discovery

22  disputes.  Can you tell me that you two will call each other --

23         **MR. WEIR:**  Absolutely.

24         **THE COURT:**  -- meet with each other, have a

25  Starbucks?  Something?  Please?

23

1      **MR. WEIR:**  I think Mr. Sganga and I normally can work

2 things out so I think that's a great idea with Mr. Sganga and I

3 are involved in these negotiations.

4           **THE COURT:**  Perfect.

5           **MR. SGANGA:**  Certainly, your Honor.

6           **THE COURT:**  I'm going to assume that you will agree

7 with that.  All right.  Nothing further for me, right?

8      **(No audible response)**

9           Anything further from you?

10          **MR. WEIR:**  No.

11          **MR. SGANGA:**  No, your Honor.

12          **THE COURT:**  Good luck with your case, folks.

13          **MR. WEIR:**  Thank you.

14          **THE COURT:**  Thank you.

15          **THE CLERK:**  All rise.  This court is adjourned.

16     **(Proceeding adjourned at 3:00 p.m.)**

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    __November 15, 2017__

            Signed                                          Dated


_TONI HUDSON, TRANSCRIBER_